ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| LEILANI CRUZ NARVÁEZ<br><br>Recurrida<br>v.<br><br>JOSÉ ESTEBAN ALICEA FERNÁNDEZ<br><br>Peticionario | KLCE202400638 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil Núm.: CG2023RF00754<br><br>Sobre: Divorcio |

Panel integrado por su presidente el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 8 de julio de 2024.

El 7 de junio de 2024 el señor José Estaban Alicea Fernández (peticionario o señor Alicea Fernández) presentó un *Recurso de Certiorari* para que revisemos la Orden que emitió el Tribunal de Primera Instancia, Sala de Caguas, el 8 de mayo de 2024. Mediante esta, el foro primario le impuso la suma de $7,600 al peticionario por concepto de honorarios de abogado.

Por los fundamentos que exponemos *se expide* el auto solicitado y se confirma la Orden contra la que se recurre.

### I.

El 17 de octubre de 2023 la señora Leilani Cruz Narváez presentó una demanda sobre divorcio por ruptura irreparable contra el señor José Esteban Alicea Fernández. Alegó que las partes se casaron el 3 de diciembre de 2016 y procrearon dos hijos: L.A.C. quien nació el 8 de septiembre de 2017 y al segundo niño L.A.C. nacido en mayo de 2022. Sostuvo que desde el 31 de julio de 2023 las partes se separaron, reclamó que se decrete el

Número Identificador

SEN2024 _____

divorcio y el hogar residencial como hogar seguro, que se fije una pensión alimentaria mensual de $12,000 y las relaciones paternofiliales, más una pensión *pendente lite* a su favor por la suma de $8,000 mensuales.  Solicitó que al amparo del Artículo 453 del Código Civil de 2020[1] se le sufrague los costos de litigio a razón de $20,000 dólares.

El 30 de octubre de 2023 la representante legal del señor Alicea Fernández interpuso una *Moción Asumiendo Representación Legal y sobre Reseñalamiento*. Adujo, en síntesis, que el caso estaba señalado para vista de alimentos el 31 de octubre de 2023 a la 1:30 pm ante la Lcda. Cristina Vélez Del Toro, pero para ese día tenía un señalamiento previo en otro caso. Ante ello, informó que se comunicó con las abogadas de la demandante y fijaron como fechas disponibles para el reseñalamiento el 14 y 16 de noviembre en horas de la tarde.  Allí aseveró que el demandado cubría la totalidad de las necesidades mensuales de sus hijos e informó que ese día realizó un pago de $1,500 directo a la demandante por concepto de los alimentos de los menores para salvaguardar su responsabilidad hasta la celebración de la vista.

Así las cosas, el 27 de noviembre de 2023 el señor Alicea Fernández contestó la demanda e incorporó una Reconvención para que se le otorgue la custodia compartida.[2]

El 23 de enero de 2024, notificada el día siguiente, el foro primario emitió una *Resolución y Orden* para aprobar el informe que rindió la Examinadora de Pensiones Alimentarias, Lic. Rosani Rodríguez Marrero.  El foro primario indicó que:

> Se establece como pensión alimentaria provisional, el pago por parte de Sr. José E. Alicea Fernández, de todas las necesidades de los menores (incluyendo los de salud) y del hogar que ocupan; según lo ha estado haciendo hasta el momento.

---

[1] Artículo 453 Manutención y gastos del litigio. (31 LPRA sec. 6800)
[2] Apéndice págs. 11-20.

> La pensión alimentaria es para beneficio de los menores Leonardo y Lionel, de apellidos Alicea Cruz.
>
> Los menores tienen plan médico provisto por el padre. Se señaló la continuación de la vista sobre Fijación para 19 de marzo de 2024, a partir de la 9:30 a.m., de forma presencial, piso 6 salón 3.

El 16 de febrero de 2024 la señora Cruz Narváez presentó una *Urgente solicitud de desacato del demandado por impago de la pensión alimentaria*. Adujo que el 31 de octubre de 2023 se celebró la vista de pensión alimentaria donde se estableció la pensión provisional de todos los gastos de los menores. Indicó que el demandado incumplió con la orden de pago, que los gastos de los menores de noviembre de 2023 a enero de 2024 ascendían a $12,428.78 y el padre solo había pagado $3,771.00, con una deuda de $8,657.78, y a esa fecha en febrero continuaba sin pagar los gastos.

El 26 de febrero de 2024 la señora Cruz Narváez interpuso otra moción *Urgente Reiterando desacato del demandado* para el En específico, expresó que el demandado debe emitir el pago de $630 a la cuidadora, más depositar la suma mensual de $6,000 para cubrir los gastos indicados en la Planilla de Información Personal y Económica (PIPE).

Así las cosas, el 28 de febrero de 2024 el foro primario notificó la siguiente orden. "Se ordena a la EPA que, en la vista pautada para la fijación de alimentos, se determine una cuantía numérica a los fines de viabilizar la determinación de cumplimiento o incumplimiento con los pagos de pensión alimentaria."[3]

Ese mismo día, el TPI emitió otra orden en la que dispuso, "Muestre causa en 10 días el Sr. Alicea por la cual no deba ser

---

[3] Apéndice pág. 28.

hallado incurso en desacato y ordenado su arresto ante su alegado incumplimiento con la pensión alimentaria de los menores. Se señala vista de desacato para el 26 de marzo de 2024 a las 9:30 a.m. de forma presencial".[4]

El 12 de marzo de 2024 Alicea Fernández presentó una *Moción en cumplimiento de orden y en oposición a solicitud de desacato*.[5] En síntesis, explicó que la vista fue celebrada, a pesar de que habían solicitado la transferencia por conflicto en el calendario. Agregó que la determinación notificada el 24 de enero de 2024, a más de tres (3) meses de celebrada la audiencia, no contenía determinaciones de hechos específicos. Que tampoco estableció cuantía alguna de alimentos. Señaló que la vista final estaba pautada para el próximo 19 de marzo de 2024. Reiteró que, desde la presentación de la demanda de divorcio, el demandado ha cubierto la totalidad de las necesidades de los menores (salud y del hogar), aportando una suma en efectivo de $1,500.00, depositada directamente a la dama en su cuenta bancaria. Agregó que, desde la salida del demandado de la propiedad donde residen los menores con su madre, la demandante bloqueó su acceso a la correspondencia, incluyendo las facturas del agua. Sostuvo a su vez que, la Resolución emitida se presta a la interpretación de cada parte, no establece cuantías específicas que impiden determinar su liquidez. Menciona que el demandado no ha incumplido. En la Oposición A Recurso de Certiorari y en Cumplimiento de Orden, que presentó la parte recurrida el pasado 2 de julio de 2024, se informa que el apelante si ha incumplido con sus deberes de alimentar sus menores y esos eventos están en disputa.

---

[4] Apéndice pág. 29.
[5] Apéndice págs. 30-33.

El 14 de marzo de 2024 en la entrada número 72 de SUMAC se incorporó el Informe de Pensión Alimentaria Provisional suscrito por la Examinadora de Pensiones Alimentarias Rosani Rodríguez Marrero el 31 de octubre de 2023 reducida a escrito el 22 de enero de 2024 y firmada al día siguiente. De este surge que el 31 de octubre de 2023 se celebró la vista sobre fijación de pensión alimentaria, sin la presencia del demandado ni su representante legal. Informó la EPA que el 30 de octubre de 2023 la abogada del demandado solicitó el reseñalamiento, pero por ser una vista inicial para fijar pensión, esta no fue reseñalada. Acto seguido, recomendó el que se estableciera como pensión alimentaria provisional que el señor Alicea Fernandez supliera todas las necesidades de los menores (incluyendo las de salud) y del hogar que ocupan según lo había estado haciendo hasta el momento.[6]

El 25 de marzo de 2024 el Tribunal ordenó que se notifique el Informe de Pensión Alimentaria.[7] La vista de desacato pautada para el 24 de marzo se transfirió para el 8 de abril de 2024.

Así las cosas, el 6 de abril de 2024 la señora Cruz Narváez presentó una *Moción en torno a desacato*. Adujo que los gastos mensuales totalizaban $12,051.93, que el demandado había pagado $8,271 y quedaba un balance de $58,014.00. Reconoció que existían ciertos pagos que el demandado los pudo hacer directamente a los acreedores. Requirió el pago de $10,000 por temeridad.[8]

El 8 de abril de 2024 el señor Alicea Fernández presentó una *Moción en torno a desacato*. Explicó que el 25 de octubre se le citó para una vista pautada para el 31 de octubre de 2023, que su abogada solicitó reseñalamiento y que luego advino en

---

[6] Apéndice pág. 34.
[7] Apéndice pág. 36.
[8] Apéndice págs. 38-39.

conocimiento de que la vista se llevó a cabo. Expresó que "[e]n llamada realizada a la oficina de la examinadora se nos notificó que la determinación del caso sería notificada por escrito por lo que, lo allí discutido no se conoció por esta abogada ni por el Sr. Alicea hasta el pasado 14 de marzo de 2024, según el acta informe notificada por la EPA, lo que no forma parte de la Resolución actual de alimentos."[9] Agregó que el Tribunal estaba imposibilitado en encontrar incurso en desacato al demandado basado en la Resolución de alimentos que no establece claramente sus términos. Además, que el incumplimiento de la Resolución no puede inferirse y tiene que surgir clara e inequívocamente lo que se reclama para que pueda hacerse valer. Entendió que adjudicar el caso en sus méritos, sin el beneficio de su comparecencia puede tomarse como una eliminación de las alegaciones sin el debido proceso de ley. Solicitó que la controversia sea atendida con carácter de urgencia ante la EPA para el correspondiente establecimiento conforme a derecho, tomándose en consideración los fundamentos antes expuestos.[10]

En respuesta a este último escrito, el 8 de abril, notificada el día 9 de abril de 2024 el foro primario emitió una orden en la que dispuso: "Enterado, se refiere con urgencia a la EPA, para que se exprese con especificidad sobre la recomendación de pensión provisional, a los fines de identificar una cuantía, al menos preliminar."[11]

El 15 de abril de 2024 se celebró el juicio en su fondo. A la vista comparecieron las partes representadas por sus abogadas. Consecuente, el 15 de abril, enmendada el 18 de abril de 2024 el TPI dictó sentencia, notificada el **30 de abril**. Mediante esta

---

[9] Apéndice pág. 41.
[10] Apéndice págs. 40-43.
[11] Apéndice págs. 44.

decretó el divorcio por ruptura irreparable, le otorgó la custodia de los dos menores a la madre y la patria potestad de forma compartida a los progenitores. Sobre el desacato y los alimentos indicó lo siguiente:

En cuanto a la solicitud de desacato, la demandante reclama que el señor Alicea debió haber pagado $10,548.00 mensual de forma directa desde la radicación de la demanda. El señor Alicea se opone a la solicitud de desacato. De acuerdo a los gastos reportados en la Planilla de Información Personal y Económica, el alimentante debía pagar $37,299.21 (incluyendo los gastos de la nana de los menores, los cuales se aclaró en corte abierta que no son $700.00 mensuales, sino, semanales). El señor Alicea pagó $15,042.29, por lo que adeuda $8,536.29 al 30 de abril de 2024, luego de acreditarle los $5,000.00 que están consignados en la Secretaría del Tribunal. Hoy el alimentante entregó un cheque por dicha cantidad.

En la partida de los $37,299.21, no se calcularon las siguientes partidas de la Planilla de Información Personal y Económica: aires acondicionados, filtro de agua, limpieza de exteriores, pintura de la propiedad, viajes de los menores, obsequios de Navidad y gastos de Halloween. Las partes en 10 días informarán cualquier enmienda o acuerdo sobre las partidas, si alguna, que el alimentante retendrá de la pensión alimentaria para pago directo, a partir de mayo de 2024.

El caso de pensión alimentaria está ante la consideración de la Examinadora de Pensiones Alimentarias. En lo que se emiten sus recomendaciones, mensualmente se depositarán $10,055.00 en la cuenta de la madre custodia. **En 10 días se hará el reclamo escrito de honorario de abogado y el alimentante tendrá 15 días para pagar**.

Entretanto, el 18 de abril de 2024 la señora Cruz Narváez presentó una *Moción para que se concedan honorarios de abogada*. En síntesis, reclamó 63 horas trabajadas, más 3 horas y media durante la vista del 15 de abril de 2024, equivalentes a 66 horas trabajadas. Estas, a razón de $200.00 por hora, para un total facturado de $13,200.00. Como parte del escrito, incorporó una tabla con la mención del trabajo efectuado en las 66 horas, que incluían lo siguiente: los escritos de desacato

presentados el 18 de enero, 16 de febrero, 26 de febrero, 5 de abril y 6 de abril de 2024; las horas invertidas en la preparación al desacato y la vista en desacato; la Redacción de Oposición a Moción de reconsideración sobre desacato, así como la preparación y comparecencia a las vistas del 8 y 15 de abril de 2024.

El 7 de mayo de 2024 el foro primario emitió la orden aquí recurrida en la que decretó lo siguiente: "Por las vistas de desacato ante el tribunal se establece una partida de honorarios de $1,000.00; Por los restantes servicios se establece una partida de $6,600.00. Las mismas se pagarán por el Sr. Alicea a la Sra. Cruz para beneficio de los menores en 15 días […]."[12]

En desacuerdo, el 7 de junio de 2024 el señor Alicea Fernández acudió a esta Curia y alega que incidió el TPI al:

> Imponer una cuantía de honorarios de abogado por la cantidad total de $7,600.00 por las vistas de desacato y los restantes servicios, los cuales resultan irrazonables.

La recurrida a presentado su oposición a que se conceda lo solicitado en el Recurso. Habiendo comparecido todas las partes estamos en posición de resolver.

## II.

### A.

El recurso de *certiorari* constituye un vehículo procesal de carácter discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. Rivera et al. v. Arcos Dorados et al., 212 DPR 194 (2023); Torres González v. Zaragoza Meléndez, 211 DPR 821 (2023); McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021); 800 Ponce de León

---

[12] Apéndice pág. 54.

v. AIG, 205 DPR 163, 174 (2020); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012).

Contrario al recurso de apelación, la expedición o no del auto de certiorari solicitado descansa en la sana discreción del foro apelativo. Torres González v. Zaragoza Meléndez, *supra*; Medina Nazario v. McNeill Healthcare LLC, 194 DPR 723, 729 (2016). El adecuado ejercicio de la discreción está "inexorable e indefectiblemente atado al concepto de la razonabilidad". García v. Asociación, 165 DPR 311 (2005).

En particular, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de sentencias y resoluciones dictadas por el Tribunal de Primera Instancia. Rivera et al. v. Arcos Dorados et al., *supra*; McNeil Healthcare v. Mun. Las Piedras I, *supra*; Mun. de Caguas v. JRO Construction, 201 DPR 703, 709 (2019). En lo que nos atañe, esta regla dispone lo siguiente: "el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia." […] Regla 52.1 de Procedimiento Civil, *supra*.

Así mismo, con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso *Certiorari*, nuestros oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, 4 LPRA

Ap. XXII-B que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*.  Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 97 (2008).  La referida regla dispone lo siguiente:

> A.  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.  Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F.  Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En el ámbito judicial, la discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. 800 Ponce de León v. AIG*, supra;* Mun. Caguas v. JRO Construction, 201 DPR 703, 712 (2019); IG Builders et al. v. BBVAPR, *supra*, pág. 338.  De manera que, los foros apelativos solo intervendremos con el ejercicio de la discreción del foro revisado en aquellas instancias que se demuestre que este último (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. Rivera et al. v. Arcos Dorados et al., *supra*.

**B.**

Nuestra jurisdicción reconoce que los menores tienen un derecho fundamental a recibir alimentos que emana de la cláusula constitucional del derecho a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico. Díaz Rodríguez v. García Neris, 208 DPR 706 (2022); De León Ramos v. Navarro Acevedo, 195 DPR 157 (2016).

La imposición de los honorarios de abogado a favor de los menores, en una acción para reclamar alimentos a favor de éstos, procede sin la necesidad de que el demandado incurra en temeridad pues dicha partida es parte de los alimentos a los que tiene derecho el menor alimentista. Llorens Becerra v. Mora Monteserín, 178 DPR 1003, 1035 (2010); Torres Rodríguez v. Carrasquillo Nieves, 177 DPR 728, 740 (2009).

Mediante el artículo 22(1) de Ley Núm. 5, 8 LPRA sec. 521, se incorporó estatutariamente referida norma, al disponerse que en cualquier procedimiento referente a la fijación de una pensión alimentaria deberá "imponer al alimentante el pago de honorarios de abogado a favor del alimentista cuando éste prevalezca".

De igual forma, el Artículo 656 del Código Civil de 2020 dispone que "[c]uando el alimentista se vea compelido a acudir al tribunal o a iniciar un proceso administrativo para reclamar su derecho a los alimentos, la cuantía que se imponga al alimentante incluirá una **partida razonable** para sufragar los gastos del litigio y los honorarios de abogados". (Énfasis Nuestro).

Ahora bien, así como la cuantía de los alimentos que se fije a favor del menor debe resultar razonable, de igual forma la partida correspondiente a los honorarios de abogado –**que es parte de los alimentos a los que tiene derecho el menor**

**alimentista**- debe regirse por el criterio de la razonabilidad. Llorens Becerra v. Mora Monteserín, *supra*, pág. 1035. Como consecuencia de ello, no procede intervenir con los honorarios de abogado que conceda el foro primario, salvo que la suma concedida sea irrazonable. Id.

Factores como la extensión del pleito y otros asociados al curso de los procedimientos y las circunstancias del caso en particular, inciden en el criterio del juzgador en el ejercicio de establecer una cuantía de honorarios justa y razonable. Id.

Luego de examinar el expediente ante nuestra consideración y analizar los trámites procesales ante el Tribunal de Primera Instancia, disponemos.

### III.

En el recurso ante nuestra consideración, el señor Alicea Fernández manifiesta que no está de acuerdo con la cuantía de $7,600 que el foro primario le fijó por concepto de honorarios de abogados. Alega que la Resolución de alimentos, emitida el 24 de enero de 2024, no contiene una cuantía de pensión alimentaria y que su contenido estaba sujeto a interpretación de las partes. Aduce que, a pesar de ello, el Tribunal de Instancia determinó encontrarle incurso en desacato imputándole un alegado incumplimiento del pago de pensión alimentaria. Señala que el desacato y la cuantía de honorarios de abogado resultan excesivas, toda vez que las alegadas gestiones que mencionó la parte demandante no dieron base para que el Tribunal tomara la determinación del alegado incumplimiento. Señaló que el tiempo que invirtió la demandante y su teoría del caso no fueron la piedra angular del desacato, sino que el Tribunal celebró una vista de pensión provisional, bajo el nombre de desacato, sin el derecho de la parte a refutar el contenido de la Planilla de Información

personal y Económica, para tomar su decisión. Aseveró que el curso de los procedimientos y las circunstancias particulares de este caso no justifican la cuantía otorgada en honorarios de abogado.    Evaluamos.

Del expediente surge que este caso inició el 17 de octubre de 2023 cuando la señora Cruz Narváez interpuso una Demanda de Divorcio contra el peticionario Alicea Fernández.    La acción incluyó, entre otros, una petición de alimentos para dos menores procreados en el matrimonio.

En cuanto al asunto de la pensión alimentaria, el 23 de enero de 2024, notificada el 24 de enero, el foro primario emitió una Resolución y Orden, a raíz de la recomendación de la Examinadora de Pensiones en la cual dictaminó lo siguiente: "Se establece como pensión alimentaria provisional, el pago por parte de Sr. José E. Alicea Fernández, de todas las necesidades de los menores (incluyendo los de salud) y del hogar que ocupan; según lo ha estado haciendo hasta el momento."

Entretanto, la señora Cruz Narváez había solicitado que el foro primario decretara el desacato contra el peticionario y este se opuso.  Trabada esa controversia, el 8 de abril, notificada el día 9 de abril de 2024 el TPI emitió una orden en la que dispuso lo siguiente: "Enterado, se refiere con urgencia a la EPA, para que se exprese con especificidad sobre la recomendación de pensión provisional, a los fines de identificar una cuantía, al menos preliminar."[13]

Finalmente, tras la celebración de la vista del 15 de abril de 2024 el foro primario dictó la sentencia de divorcio.  En cuanto a la pensión para los menores, el tribunal de instancia estableció

---

[13] Apéndice págs. 44.

que el señor Alicea Fernández pagó $15,042.29 y que adeudaba $8,536.29 al 30 de abril de 2024, luego de acreditarle los $5,000.00 que estaban consignados en la Secretaría del Tribunal. Dispuso, además, que el caso de pensión alimentaria estaba ante la consideración de la Examinadora de Pensiones Alimentarias. En lo que se emitían sus recomendaciones, decretó que mensualmente el señor Alicea Fernández depositará $10,055.00 en la cuenta de la madre custodia. Acto seguido, le ordenó a la señora Cruz Narváez a realizar el reclamo de honorarios de abogado.

Según requerido por el TPI, la señora Cruz Narváez presentó una moción, a la que incorporó una tabla con la descripción de las tareas realizadas, las fechas y las horas trabajadas para cada concepto reclamado. En el escrito mencionó las mociones que presentó al tribunal relacionados a su petición de desacato, la preparación para las vistas, así como las comparecencias a las vistas del 8 de abril y 15 de abril de 2024. Por esos conceptos reclamó 66 horas de trabajo a razón de $200.00 por hora para dos abogadas, para un total de $13,200 por honorarios de abogado. Evaluado el asunto, el foro primario le concedió la suma $6,600 por trabajos, más $1,000 adicionales por las vistas de desacato.

Según la normativa aquí reseñada la obligación alimentaria la imposición de los honorarios de abogado a favor de los menores, en una acción para reclamar alimentos a favor de éstos, procede sin la necesidad de que el demandado incurra en temeridad.[14] Ahora bien, la cuantía que se imponga al

---

[14] Véase Llorens Becerra v. Mora Monteserín, supra.

alimentante incluirá una partida razonable para sufragar los gastos del litigio y los honorarios de abogados.

En este punto, considerando la normativa antes expuesta, que autoriza la fijación de honorarios, pero bajo el criterio de razonabilidad, solamente entendemos meritorio confirmar la partida de $1,000 adicionales por las vistas de desacato. Justipreciamos que estas comparecencias fueron adicionales a las 66 horas de trabajo incorporadas en la tabla. Por lo que, los $1,000 adicionales otorgados por este concepto son razonables. Por ello confirmamos también la concesión de $1,000 adicional a los $6,600 de honorarios.

No encontramos que la determinación recurrida sea contraria a derecho, que el foro primario haya incurrido en abuso de discreción o que esté presente algún otro criterio mencionado en la Regla 40 de nuestro Reglamento. Por ello confirmamos en su totalidad la *Orden* recurrida.

**IV.**

Por los fundamentos antes expresados, se expide el auto de *certiorari* y se confirma la Orden del 8 de mayo de 2024 que requiere la concesión de $6,600 por honorarios de abogado más $1,000.00 por los trámites del desacato.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones